Moncure, P.,
delivered the opinion of the court.
The court is of opinion, that the hustings court erred in overruling the motion of the prisoner to set aside the verdict upon the ground that the same was contrary to the law and evidence. The confessions made by the prisoner to the prosecutor Shields, and to the constable Wren, having been illegally obtained, were properly excluded by the court, as being inadmissible evidence. But the transactions which occurred between Wren and the gamblers, and the father of the prisoner, as set out in the second bill of exceptions, were admitted as evidence against the prisoner; no doubt upon the ground which is thus stated in 1 Arch. Crim. Pract. & Pl. p. 424 top, 134 marg., that “even in cases where the confession of a prisoner is not receivable in evidence, on account of it having been obtained by means of some threat or promise, any discovery made in consequence of it may be proved; and in such a case the counsel for the prosecution is merely allowed to ask the witness, whether, in consequence of something he heard from the prisoner, he found anything, and where, &c.; and the witness in answer can only give evidence of the fact of the discovery.”
But the thing found, or the discovery made, in consequence of the confession, must be material in itself, and appear to have some connection with the crime or the charge, independently of the confession. The rule and the reason of it is thus laid down in 1 Green-leaf on Ev.
“§ 231. The object of all the care, which, as we have now seen, is taken to exclude confessions which are *1001 not voluntary, is to exclude testimony not probably true. But where, in consequence of the information obtained from the prisoner, the property stolen, or the instrument of the crime, or the bloody clothes of the person murdered, or any other material fact is discovered, it is competent to show that such discovery was made conformably to the information given by the prisoner. The statement as to his knowledge of the place where the property or other evidence was to be found, being thus confirmed by the fact, is proved to be true, and not to have been fabricated in consequence of any inducement. It is competent, therefore,' to enquire, whether the prisoner stated that the thing would be found by searching a particular place, and to prove that it was accordingly so found; but it would not be competent to enquire, whether he confessed that he had concealed it there.”
“ § 232. If, in consequence of the confession of the prisoner, thus improperly induced, and of the information by him given, the search for the property or person in question, proves wholly ineffectual, no proof of either will be received. The confession is excluded, because being made under the influence of a promise, it cannot be relied upon; and the acts and information of the prisoner, under the same influence, not being confirmed by the finding of the property or person, are open to the same objection. The influence which may produce a groundless confession, may also produce groundless conduct.”
The notes of Waterman to 1 Arch., supra, refer to many cases having an important bearing on this subj’eet. And so have the following cases, some or all of which were cited by the counsel for the prisoner in this case. Griffin’s case, 1 Russell and Ryan 151; Jones’s case, Id. 152; and Jenkins’s case, Id. 492. Also *1002 the State v. Due, 7 Foster’s R. 256. The first two oí these eases seem to have been decided on the same day by the same judges, and yet they seem to be somewhat in conflict with each other. They were decided at the "Winchester Lent assizes in 1809. In Griffin’s case, 'a prisoner was charged with stealing a guinea and two-promissory notes. The prosecutor told him that it would be better for him to confess. Held: That after this admonition the prosecutor might prove that the-prisoner brought him a guinea and a five pound note, which he gave up to the prosecutor, as the guinea and one of the notes that had been stolen from him. The judge, Chambre, told the jury that notwithstanding the previous inducement to confess, they might receive the-prisoner’s description of the note accompanying the act of delivering it up, as evidence that it was the stolen note; and they found the prisoner guilty. ' A majority of the judges, to wit: seven of them, held the conviction right; two of them were of a contrary opinion.
In Jones’s case, which was for the larceny of money to the amount of one pound eight shillings, the prosecutor asked the prisoner on finding him, for the money he, the prisoner, had taken out of the prosecutor’s-pack, but before the money was produced said, “ he only wanted his money, and if the prisoner gave him that,, he might go to the devil if he pleased.” Upon which prisoner took 11s. 6%d. out of his pocket, and said it was all he had left of it. Held : That the confession ought not to have been received. The same judge, Chambre, left the whole- of this evidence for the consideration of the jury, and they found the prisoner guilty. A majority of the judges present, to wit: five of them, held that the evidence was not admissible,, *1003 and the conviction wrong. Three of them contra. Lord Bllenborough dubitante.
In Jenkins’s case, which was decided in 1822, the charge was stealing several gowns and other articles. The pi’isoner was induced by a promise from the prosecutor to confess his guilt, and after that confession he carried the officer to a particular house, as and for the house where he had disposed of the property, and pointed out the person to whom he had delivered it. That person denied knowing anything about it, and the property was never found. The evidence of the confession was not received; the evidence of his carrying the offieer'to the house as above mentioned was; but as Mr. Justice Bayley, before whom the prisoner was convicted, thought it questionable whether that evidence was rightly received, he stated the point for the consideration of the judges. They accordingly considered it, and were (it seems unanimously) of opinion that the evidence was not admissible, and that the conviction was therefore wrong. “ The confession was excluded, because being made under the influence of a promise, it could not be relied upon, and the acts of the prisoner, under the same influence, not being confirmed by the finding of the property, were open to the same objection. The influence which might 'produce a groundless confession might also produce groundless conduct.” This ease is in direct accordance with Jones’s case, and if they are in conflict with Griffin’s case, they overrule it, as they were subsequent thereto; at least Jenkins’s case. But Griffin’s ease seems to rest upon the ground (whether right or wrong) that the note delivered up was of the same denomination and of the same bank with one of the notes stolen, and that the act of delivering it up was accompanied by the-declaration of the prisoner, that it was one of the stolen *1004 notes. In Jones’s case it does not appear that the money delivered up by the prisoner was admitted, or in- • tended to be admitted by him, to be a part of the identical money he had stolen, though we do not mean to say that even such an admission would have varied the ease. In the State v. Due, which was much relied upon by the counsel for the prisoner in the argument of this case, and in which most of the authorities on this subject are reviewed, it was held that on a charge of larceny, the production of property by a prisoner, made in consequence of inducements held out to confess, will not be competent evidence against him, unless the property be identified by other evidence as that which has been stolen. The prisoner was charged with stealing two one hundred dollar bills and a wallet. On inducements held out to him to confess, he produced a hundred dollar bill, saying to the complainant “this is yours;” or, as another witness understood him, “this is one of the bills which I took with the wallet.” It was held that the evidence was incompetent, unless the bill should be identified by other evidence as one of those which had been stolen. This case, as well as Jones’s and Jenkins’s, supra, see.ms to expound the law correctly. And now let us apply it as so expounded to this case.
How if the money delivered up by the gamblers and the father of the prisoner to the constable, Wren, had been proved by independent evidence, other than the •confession of the prisoner, to have been the identical money confessed to have been stolen by him, then the fact that the stolen property was thus discovered, and that the prisoner’s confession led to such discovery, would have been admissible evidence in the case ae•cording to the law as just expounded.
But, so far from there being any independent evi *1005 deuce of identity of the money delivered up to the constable, it is not pretended that it was the same money that was stolen, as it almost certainly was not. And the gamblers denied that the prisoner had lost the money claimed with them ; and one of them protested that the prisoner had not been in his house. The prosecutor was present at the interview between the constable and the gamblers, and said he meant to prosecute them. It does not certainly appear what for. Though it is probable he meant, and they understood that he meant, for gambling; for they had been guilty of gambling, but do not appear to have been in any way implicated in, the larceny. That such a menace to prosecute them for gambling, a highly penal offence, made at a time when there was a great effort to enforce the law against that offence, should have induced these gamblers to purchase an exemption from prosecution for it by paying up among them the sum of $101, which they did under protest, is not at all strange,, even supposing that they never won a dollar from the prisoner. In regard to the balance of forty-six dollars paid to the constable by the prisoner’s father, there is no evidence whatever that that was a part of the money stolen, or that any part of the money stolen went into the hands of the father, who may have paid that sum out of his own money to save his son from a criminal prosecution.
Then all this evidence in regard to money received from the gamblers, and from the father of the prisoner, together with the confession which led to its discovery, is illegal and inadmissible evidence, and must be excluded from the case, and being so excluded there is, certainly, not enough in the ease to warrant-the verdict of the jury. For all the evidence then remaining in the case is, that the prisoner and another *1006 were room mates of the prosecutor; that the prosecu- * tor received $150 for his work, and locked it up in his which he kept in an adjoining unlocked room, with two doors, one opening into their bed room, the other into a porch; that about two weeks afterwards, the prosecutor went to his trunk and found that his money had been stolen, the trunk being still locked, having been opened with a false key; that on the day after the prosecutor deposited his money in his trunk, the prisoner remained in his room after the prosecutor and the third occupant had gone to their work (all the said occupants being stone cutters and working at the same yard), that prisoner did not go to his work or the yard that day; that on the evening of that day, prisoner purchased a new suit of clothes, costing $65, and for some time was spending money very freely, and neglecting his work; and that upon ascertaining his loss the prosecutor took out a warrant for the arr rest o.f the prisoner and placed it in the hands of John Wren, who was appointed a special constable by the justice for the purpose of making the arrest of the prisoner on the warrant; that John Wren arrested the prisoner, and having offered him inducements, the prisoner made the confession which led to the transaction as aforesaid with the gamblers and the father of the prisoner.
Certainly this evidence, separate and apart from the said transactions and the said confession, which, as we have seen, are illegal and inadmissible evidence, can create no more than a mere suspicion of guilt in the prisoner, is altogether inconclusive, and is wholly insufficient to warrant the verdict of guilty against him, especially when considered in connection with evidence in the cause in behalf of the prisoner, that he received three dollars and fifty cents per diem for his *1007 wages, and was paid off on the same day with the prosecutor. Why may we not presume, in favor of innocence, that the $65 he laid out in clothes, and the other money he was spending very freely, was his own money ? Certainly it was not the prosecutor’s, according to the theory of the prosecution, which is that his money, some of it, went to the gamblers, and the balance was deposited in the hands of the prisoner’s father.
We therefore think the court erred in not setting aside the verdict and granting a new trial, as mentioned in the second bill of exceptions.
We also think, for reasons already assigned, the court erred in not excluding from the jury the question and answer mentioned in the first bill of exceptions.
Therefore, the judgment of the hustings court is reversed, and the cause is remanded for a new trial to be had therein in conformity with the foregoing opinion.
The judgment was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the question and answer referred to in the first bill of exceptions were illegal and inadmissible evidence, and the court below erred in not excluding the same.
The court is further of opinion, that the confessions made by the prisoner to Shields and Wren, and the transactions of Wren with the gamblers, and with the prisoner’s father, mentioned in the second bill of exceptions, were illegal and inadmissible evidence, and ought not to have been admitted; that the other facts proved in the case and certified in the said second bill *1008 of exceptions, were insufficient to warrant the conviction of the prisoner, and that the court below erred in overruling the motion of the prisoner to set aside the verdict of the jury.
Therefore it is considered that the said judgment is erroneous, and be reversed and annulled; and that the verdict of the jury be set aside; and the cause remanded to the said hustings court for a new trial to be had therein in conformity with the foregoing opinion.
Which is ordered to be certified to the said hustings, court.
Judgment reversed.